2015-5066 King v. U.S. Mr. Fay, please proceed. Good morning. May it please the Court, I would like to reserve three minutes for rebuttal. This is an unusual case regarding nonpayment of overtime under the Fair Labor Standards Act. Hundreds of first-line supervisory Border Patrol agents working as instructors at the Border Patrol Academies received FLSA overtime pay until 2010, then received it again beginning in January 2012. And this case is about their claim for back pay and associated relief in the interim period. The only thing that changed in the interim period was their job grade. From 12 to 13, none of the duties of the position changed. I'm going to direct my comments today to our two main points. First, that the Court erred in granting summary judgment to the government on the basis of the job description alone. And second, that the Court should have granted summary judgment to the plaintiffs on the basis of undisputed testimony. Is it your contention that the job descriptions are, in fact, inaccurate? Yes. Well, that's a complicated question. The job description at the beginning talks about the general subject matter of instruction at the Academy. Identifying firearms and driving and Spanish, et cetera. But what is inaccurate for these people are those percentages. Yes, we do contend that. And what evidence is there that you put in or otherwise in the record indicating that information in the position descriptions is inaccurate? Most of it's indirect in the sense that we relied upon the testimony of the subject matter experts at the agency who testified that they examined the actual duties, that they applied the FLSA tests, and found that these were not exempt duties. Well, the specific testimony that I found, at least from Ms. Copeland, seemed to suggest that she was relying on the position descriptions. Now, there are a couple of places where she alludes to duties, but I didn't see those references as applying to this particular set of employees. Rather, she was talking about the process of the 5,800-and-some-odd people where their position descriptions were being reviewed. But this position description for these employees was not changed, and I thought that the gist of her testimony was that she relied on the position description. Can you point me to anything in her testimony in which she says, here's what we found when we looked at their actual work that was different from the position description? She didn't say that explicitly, but I disagree with Your Honor in the following sense. At Joint Appendix 142, where she talks about the FLSA tests, and at 146, she is talking both about the general classification system and also about these specific individuals. And especially at 146, Your Honor, there was a reference. She said, we made sure, this is her deposition, page 58, we had a discussion with Clark Messer, he's the number two person at the Academy, and his staff about the nature of the work, how the work was being assigned, looking at the job descriptions themselves, the things that we would do to make a Fair Labor Standards Act FLSA determination. So she's talking about these people specifically. And then back on page 142, there's a discussion about what do you do when you go through the CFR, because Judge Firestone said that she didn't discuss the professional exemption. And on page 43 of her deposition, she was asked what were the criteria under the FLSA you looked at, and she said whether they meet the executive, the administrative, the professional. So she did discuss those exemptions. But is that in the context of looking at the position description or looking at the actual work? My impression from her testimony is that she was reviewing position descriptions rather than asking someone, well, what do they actually do? What is the indication that she's finding out what they actually do as opposed to what's in the position description? I don't think you can interpret her comments on page 58 of the deposition, the Joint Appendix 146, where she says, we had a discussion with Messer and his staff about the nature of the work. I don't think we can interpret that as a discussion about the position description at all. But granted, she talked about both. What is fuzzy in the record is what position description she was talking about, because it was not clear from most of this testimony that she was talking about the position description that's caused the problem here, which was a 2001 position description that was adopted after this controversy arose in 2012. In the aftermath of this classification review, the agency said, we're going to white out the exempt, put in a non-exempt, and we're going to adopt this. But they didn't otherwise change the position description, as I understand it. Well, that's the problem. What's the position description? Are you talking about HO 293L? Well, those are the only versions in the record. Well, that's pretty much what we're stuck with. It's a problem. But I would direct the Court's attention to a fairly important memo, and I can hand this up. It's in JA465 of the Adjoint Appendix. It looks like everybody has it. And this is in the middle of the classification review. And the Office of Training and Development at the Border Patrol Academy, which those are the people in the field, Mr. Messer's operation, they're summarizing what's happening in the course of this review. And going directly to the Court's question, in the section on cause and effect, he refers to two different position descriptions, one for the supervisors in the field and one for the supervisors at the academy. Now, at that time, they had not adopted this 2001 Grade 13 position description for this position. So he must be talking about other position descriptions. Well, I assume he's talking about the difference between HO 292, which is the field, and 293, which is the CDIs, right? Well, I don't think we can make that assumption for the grade involved because when these people were in this position up until the time they were upgraded, they had the same classification, supervisor, border patrol agent, course developer, instructor, grade 12. That's what we're missing here. I mean, to get to the bottom line, Your Honor, we believe the difference between HO 292L and HO 293L, which are both in the record at JA 352 and JA 362. See, one of them, I assumed that these two represented the different positions depending on whether they were in the field or at the academy. One of them was initially marked exempt and the other was initially marked non-exempt, right? Well, 352 and 362 are the ones that were both marked exempt. I believe 357 and 367 are the ones. Oh, yes, that's correct. Okay. And again, Your Honor, it was not revealed until the defendant's summary judgment opposition that the documents furnished to the plaintiff's case had been altered. So when we went into our summary judgment position, we assumed that 357 was an authentic document and that it had been in place at the academy for 13s since 2001 and that they had been classified as non-exempt. They submitted an affidavit saying, no, we whited out the one and we changed it to the other after January 2012. So none of that had any historical relevance. That was pursuant to Mrs. Copeland's reclassification decision, right? It's not clear that Mrs. Copeland was dealing with this classification. Her affiant Grayson said, we took it, but even looking at Grayson's affidavit, she did not say we looked at the duties contained in the position description itself to see if those matched what the people did at the academy. There was never any testimony to that effect. That was our whole point, Your Honor, in opposing the summary judgment, that the government presented no testimony whatsoever to match the duties with the position description. And I would say that certainly Mrs. Copeland did not do that either. She talked about the position description that was in effect as she testified in 2014, but she did not go back and say we matched the duties in this GS13 thing with what the people did. And I would say the testimony as a whole counters that anyway. Keep in mind this was a case about people who worked massive amounts of overtime. They were working 100 to 120 hours per pay period. And what were they doing? It was because of the needs of the service. All of this was unanticipated overtime because they had to be at the academy. It seems to me you're saying something that's inconsistent if I read your summary judgment motion with what you put in the motion. I mean you said in the motion that Mrs. Copeland absolved the parties of the need to put in extensive discovery by relying on the agency's position descriptions for her testimony. That seems to me you're saying she is relying on the PDs. She did in part. The state of the record at that time, though, Your Honor, was that we were given the document that was the whited out document without any revelation that that document was whited out in 2012. The only thing that was whited out was the exempt versus non-exempt, right? Yes, but if it had been the other way around, if this document had been, as it appeared on its face, in place since 2001 as non-exempt, that would have been a very strong piece of evidence to show, as a matter of fact, we used it to show there was a willful violation because we said, here the agency had actually classified these people as non-exempt for close to 15 years, but they didn't tell us. Later on the government brought in an affidavit saying, well, no, that's not what happened because we changed the document. So I think that the position description itself does not trump what this court has said in Berg v. Newman. You have to look at the actual duties of the position. There was no testimony whatsoever by any government official here as to the actual duties of the position to match those up against this position description. And if you, again, if you look at the thing on its face, we're not trying that today because we rely on the legal argument that the government's duty is to show that these folks actually did these things. What about Mr. Messer and his testimony on JA 119 where he articulates and discusses, it seems, the duties? You said the government produced no testimony at all by anybody about the duties, and it seems like he's doing it here. Right. His testimony was in favor of the plaintiffs, though, because he's the gentleman who brought up the disparity that caused the review to take place. And he said, if you look in JA 465, the July 20 memo, it says that the Border Patrol Academy maintains that the same basic duties occur in both position descriptions. That is, the non-exempt duties in the field also apply to the non-exempt duties at the academy, that their basic supervisory job is the same in both places. It was historically non-exempt and should remain non-exempt. So that was his basic testimony. Then he was asked, well, what differences are there? And the government says that, well, the judge called those significant differences. He didn't say they were significant. He simply said that at the academy, of course they put out their pens and papers and get supplies and things like that, but that their basic duties, the primary duties, which is the test under the FLSA, are the same as the people in the field. And he enumerates those as scheduling, performance management and evaluation, and fundamental supervisory duties. Would you agree that the CDIs are required to have and maintain advanced knowledge? No. Because the qualifications to become an instructor are the same as to become a Border Patrol agent. High school education is required is all, and it says specifically in OPM's regulations that's not sufficient to be a learned professional. You have to have a course which is akin to a degree or something like it that leads to an advanced certificate. And as in the, this is, the Border Patrol Academy is virtually identical to the Federal Law Enforcement Training Center in Glencoe. And in the Astor case, the court explained why this is not an educational standard. It's not virtually identical, is it? I mean, language requirements, there seem to be a number of distinctions. Well, in terms of, of course, each element has to be met, Your Honor. Right, right. Typically the Spanish instructors come in with the facility. But, but those, there's no, there was nothing in the record to show that the training at the academy to become an instructor was anything longer than the two weeks required at Glencoe. And, again, that's something that the burden would be on the government to come in and show that each of those elements are met. We rest on our briefs as far as those, the other two elements, learned, the learned professional requirements of educational establishment and the long training course. Okay, well we should hear from the government now. So we'll restore some of your rebuttal time which you've used up. Thank you, Your Honor. So, Mr. Volk. May it please the Court. The Court of Federal Claims properly granted summary judgment and this Court should affirm. There has never been any dispute that the main responsibility of appellants in this case was to provide classroom instruction. And that is the basis on which the Court applied the plain language of the regulations in finding that the teacher exemption applied here. This appeal is much more about the summary judgment standard than it is about the FLSA. Yet there isn't some question of statutory or regulatory interpretation for the Court to make here regarding the FLSA. Appellants are arguing that the trial court failed to apply the summary judgment standard properly. But the Court did. Appellants keep saying that the evidence wasn't enough to meet the government's burden. But as to facts that were undisputed, during oral argument, the Court repeatedly confirmed with plaintiffs that there weren't disputes about what these individuals did, that there wasn't a problem with the position description. During Mr. Fay's argument, the only thing he has identified, during his argument or his briefs, the only thing appellants have identified is some issue with respect to the percentages identified in that narrative. The percentages are totally inconsequential in this case because every one of the duties would be exempt under one basis or another. But back to the main point. The main point is what the- There's one case out there that I remember reading that indicates that a job description alone wouldn't be enough. So what is the government's evidence in this case? Would you think this job description differs from the one at issue in the prior precedent that we're bound by? Sure. So in this case, the Court relied on more than just the position description. And that's point number one. The Court's opinion shows that it relied on deposition testimony. What deposition- Go ahead. Which deposition testimony? So the Court cited Mr. Messer's deposition where he explained about the differences in a summary fashion. It wasn't great detail, but differences between these supervisory border patrol agents who worked in the field versus the ones at these academies. And it made clear that they were there to teach. And so- That struck me. Messer's testimony, you're right, and you cite to the passage of Messer's testimony, which I think the presiding judge referred to in connection with the appellant's argument. But that struck me as kind of thin as a- It certainly wouldn't be sufficient to serve as a plenary description of the job tasks that are performed by these employees. You're relying really on the position description, aren't you? I mean, that's basically your case. Your Honor, there's no question about it. The position description was a detailed – in this case, this position description was a detailed account of what the plaintiffs did, and it was more detailed than the other evidence. And your contention is that in the Burr case, for example, the position description was much less detailed? Is that- Our contention is that in that case, like some others, the position description was found inadequate to meet the needs of what was needing to be decided in that case. That holding should not be interpreted as setting some different summary judgment standard for FLSA cases or saying that position descriptions can never be relied on or that the court has to presume that they're wrong, even if everybody is citing to them. We were not the first ones to cite to the position description. This case started with- Your answer is not responsive to Judge Bryson's question. His question was very precise, and I'll rephrase it and change it a little bit so that maybe we can get better clarity out of you. What is it that you think the Burr precedent stands for vis-a-vis position descriptions? Nobody has suggested that it stands for the proposition that they can't ever be relied on or part of the evidence. But in that case, the general position description, as written, was deemed to be insufficient in and of itself to prove what the government needed to prove. So do you need to tell us how it differs from this one or is what precisely the law is that comes from Burr and why it doesn't apply here? And so we would go to the language in Burr. And I'm looking at 503, page 503, where Burr explained that the record in that case, the record provides little if any evidence of appellant's supervisory or managerial functions on a daily basis. And so as we distinguish that to this case, in that case we were talking about, one, different positions. We were talking about electronic technicians, not teachers. We were talking about the administrative exemption, not the teacher exemption. As we compare that, we really do think that Burr was a holding that's limited to its facts and there's not some sweeping proposition of law. As we compare those facts to this case, here we've got the teacher exemption. That's what's at issue. And it was never in dispute from the original complaint. It would seem very strange to suggest that if there were a rule of law which said that job descriptions alone cannot meet, suffice, without additional record evidence to establish the government's burden when it comes to the administrative position or the executive position, it would seem strange if your critical point of distinction were that only applies to administrative and executive positions but not to teaching positions, which is what I heard you say a minute ago. And that would seem like a very strange argument. Your Honor, I definitely want to clarify. We have a two-point response to this. The first is that we do not think that Burr is properly interpreted as saying that position descriptions can never suffice. We don't think that's the right way to interpret that precedent. That's point number one. Point number two, even if that were the rule, that's not what happened here. We had different facts here. It wasn't just the position description here. We had something that was squarely addressed and undisputed. And it met the requirements of what was to be decided. This case actually could have been decided on the pleadings from the original complaint. It was made clear that plaintiffs provided classroom instruction, and that's what they did day to day. So we didn't need to figure out, well, what was 51% of their job? It was all along clear that the appellants were there to provide classroom instruction. And that, under the plain language of the regulation, meets the exemption requirement. And so on that basis, the court properly decided this case, and it was on that basis. The court got it right, and this court should affirm. What about Ms. Copeland's testimony? Why is, in your view, Ms. Copeland's several references, why are those insufficient to create an issue of fact? So appellant's argument with respect to Ms. Copeland's testimony was that because she had made the determination, as the classification official for the agency, that this should be switched from exempt to non-exempt, that therefore the matter was decided. And the court, of course, disagreed. And so it wasn't a factual issue here. There's not a dispute about the facts with respect to Ms. Copeland's testimony. She was designated under Rule 30b-6 to testify as to why CBP made that change. And she did that. She explained what she thought. She explained her view of things. Those facts aren't in dispute. They're not really even material to the decision here. This was a matter of applying the facts of what the appellants did to applying the law, the regulation, to what they did. And so the facts of why that change was made, they really didn't, and that's what Ms. Copeland testified about. They really don't affect the outcome of this case. But Ms. Copeland testified that she had discussions with Mr. Messer and his staff about the nature of the work, how the work was being assigned. She looked at the job descriptions themselves. It looks like she did a lot more than simply base her decision on the job descriptions, and then she repeatedly refers back to those conversations with Mr. Messer and his immediate staff. So it seems as though she had a heck of a lot more information when she was making her decision than the court below did when it was making its. And why doesn't that potentially create a question of fact? Because she reached a different conclusion based on her conversations with them about the nature of the work that they were performing. Why doesn't it create a fact about what really were the day-to-day activities of these individuals? It didn't create a dispute of fact because none was presented to the court. None was presented to the court of what? The court of federal claims. No dispute of fact was actually presented. And so while one could read that snippet, not the whole transcript from that deposition or the whole record, but if one read that snippet, one could say, oh, maybe there's something to look at here. But if that was the case, it needed to be presented to the court of federal claims. It can't just be that. And with respect to the discussions with Mr. Messer, appellate's counsel— Why can't it just be that? Why can't she say, when I did all this additional work above and beyond the job description, I concluded, my entire staff concluded, my supervisor concluded, we were unanimous when we looked at this evidence that these people qualified? I mean, that's a lot of people all sitting in a room looking at stuff different from what the court of federal claims apparently had in front of it and reaching a conclusion about the status of these employees. And that's just it. It's the issue of the conclusion. The facts we would need are the facts of what the duties were, not the conclusions of a particular agency official. And with respect to what was being discussed with the academy staff, in particular Mr. Messer, who was a representative of the academy, of the Office of Training and Development staff, the memo that appellants pointed the court to during their exam— Would this be a different case if, for example, Ms. Copeland had actually testified, not just that she had talked with all these different people about the work that they were doing, but if there was something in here where she indicated that she found the day-to-day activities differed from that in the job description or something like that? Would that make this a very different case? If we had somewhere, anywhere, in there, elsewhere, if we had something that in any way contradicted the other evidence, the position description, any of the other evidence, if she provided any specific testimony that contradicted that, or if we had that anywhere, it could be a very different case. Like any sort of declaration from any one of the employees or anything? Absolutely. Any sort of a statement from a plaintiff that raised any sort of a dispute about what they actually did, this would be a— And then you'd have a genuine issue. We would have a totally different case and we could very well have a genuine issue. But I suppose you would also say that it would be incumbent upon the plaintiffs to make that argument to the Court of Federal Claims rather than saying that the position description itself establishes the legal right to non-exempt status. Absolutely. Which was, as I understand it, their position before the Court of Federal Claims. And it goes beyond just the failure to tell the court that there is potentially some disagreement by pointing to some particular evidence or some statement of somebody with specifics on what could potentially be wrong. In the oral argument, if not the briefs, the trial court here was told that there wasn't anything to be worried about there, that there wasn't any dispute about what these employees did, that there wasn't anything wrong with relying on the position description. Appellants can't come to this court now and ask for this court to do something different. The court did not make an error. The court got it right and this court should. Okay. Thank you, Mr. Volk. Mr. Fay, you have two minutes of rebuttal time. Thank you, Your Honor. Two brief points. One, I was surprised to hear that the percentages in that position description are inconsequential. The government would have the burden of showing that that's what these people did. Now, we're hearing two things. One is that they did classroom instruction. Classroom instruction by itself is not an exempt or non-exempt function. We'd have to find out what the duties were. So, for example, in that HASHOP case, space mission simulator instructors were deemed to be non-exempt because they did not meet the standards of the professional exemption. So just to say they're classroom instructors. We all agree they did classroom instruction. We do not agree that they did 20% course evaluation and all those things. If you read that position description, there is scant reference to normal instruction in the classroom. It's all other things. When you say you don't agree that they did all this, where is the evidence? Or even, where did you make that argument before the Court of Federal Claims? Because I couldn't find it anywhere. Right, because we relied on the fact that the agency itself had, through its subject matter experts, made the opposite determination. They were non-exempt. But you didn't make that argument to the Court. Oh, yes, we did. Well, where? He's talking about the oral argument. I read both of your pleadings on summary judgment, and I didn't see that argument being pressed. We relied on the fact that the testimony that was binding on the government was that they had done this review with the relevant people in the field and in headquarters and classification and come to the conclusion that the duties were non-exempt. And again, I just refer you again to Joint Appendix 146 and 142 as samples of that. The last point I would like to make. That's where the evidence is that you are now relying on. What I'm looking for is any indication that you made an argument based on that evidence to the Court of Federal Claims, and that's what I'm not seeing. No, we didn't make that argument. An argument, in other words, that the position description was not accurate because it did not correctly express what these people actually did in the day-to-day basis. Well, we didn't find out until later that the position description was altered. We didn't make that argument before the Court of Federal Claims. No, we did not make it in those terms, Your Honor. And finally, I just wanted to say that the Berg standard was codified in OPM's regulation at 5 CFR 551.202E, which specifically states that while position descriptions and titles may assist in making the exemption determination, I was paraphrasing, and then quote, the designation of an employee as FLSA exempt or non-exempt must ultimately rest on the duties actually performed by the employee. Thank you very much. Thank you, Mr. Fay. The case is taken under submission.